UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIERRA WILLIAMSON, PRINCETON B. WILLIAMSON, and MICHAEL C. WILLIAMSON, | ) ) ) | |
| | ) | Case No. 14-cv-6397 |
| | ) | |
| Plaintiffs, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| v. | ) | |
| | ) | |
| CHICAGO POLICE OFFICER WILFREDO ORTIZ, Star no. 9748, and THE CITY OF CHICAGO, a municipal corporation, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs, Kierra Williamson, Princeton Williamson, and Michael Williamson, brought this action against Chicago Police Officer Wilfredo Ortiz and the City of Chicago, alleging that Officer Ortiz used excessive force against the defendants. After a lengthy trial, a jury found in favor of the plaintiffs, awarding a combined total of $4,250,000 in compensatory damages and $500,000 in punitive damages. The plaintiffs' attorneys, along with Princeton and Kierra Williamson's former attorney Regan Ebert, now move this Court to recover their respective fees and costs. For the reasons set forth herein, their motions are granted in part and denied in part.

**Procedural Background**

The shooting at issue in this case happened on January 1, 2014. On January 6, 2014, Regan Ebert was retained by Kierra and Princeton Williamson's grandmother to represent Kierra and Princeton, each of whom signed a one-third contingency fee attorney-client agreement. Jeffrey Neslund and Michael Robbins subsequently filed appearances on January 8, 2015, and represented to the Court that they were the plaintiffs' sole counsel. On March 19, 2015, the Court terminated Ebert's appearance after the plaintiffs clarified that Neslund, Robbins, and Robert Robertson were

1

representing them in this action. On March 28, 2017, the defendants filed a motion for partial

summary judgment, which was denied. The plaintiffs subsequently sought to amend their

complaint, but that motion was denied in light of the pending trial. The trial was bifurcated, so that

the jury would first resolve Officer Ortiz's liability before then continuing to address the plaintiffs'

*Monell* claims. The trial was held from September 7, 2017 until September 17, 2018. During the

jury's deliberations, the defendants agreed that they would accept the entry of an adverse judgment

on the plaintiff's *Monell* claims in the event that the jury found against the city on the excessive force

claims. The jury subsequently returned a sizeable verdict in the plaintiffs' favor. The plaintiffs'

lawyers now seek to recover $3,626,066.25 in fees for a total of 7,263 attorney and paralegal hours

spent working on the Williamsons' case. Ebert seeks to recover $40,568.04 in attorney's fees and

costs from Kierra Williamsons' proceeds and $24,535.97 in attorney's fees and costs from Princeton

Williamson's proceeds that she incurred while working on their cases under a contingent fee

agreement.

**Legal Standard**

District courts have discretion to award reasonable attorneys' fees to the prevailing party in a

section 1983 action. 42 U.S.C. § 1988(b). To determine what fees are reasonable, the Court begins

by calculating the lodestar amount based on the hours reasonably expended by counsel and their

reasonable hourly rates. *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). The Court may then

adjust the lodestar based on various factors including the degree of success, the novelty and

difficulty of the issues, awards in similar cases, and the relationship between the lodestar amount and

the damages awarded. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3, 434, 103 S. Ct. 1933, 76 L.Ed.2d

40 (1983).

**Current Counsel's Fee Petition**

The defendants first contest the reasonableness of counsels' hourly rates. The reasonable rate for counsel's time is calculated based on the market rate that lawyers of similar experience and ability in the community normally charge their paying clients for the type of work in question. *Gautreaux v. Chicago Housing Authority*, 491 F.3d 649, 659 (7th Cir. 2007) (quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 519 (7th Cir. 1993)). Although the party seeking fees bears the initial burden of producing evidence establishing her market rate, once evidence is provided it becomes the opposing party's burden to demonstrate why a lower rate should be awarded. *Gautreaux*, 491 F.3d at 660 (quoting *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999)). The best evidence of the market rate for an attorney is the amount the attorney actually bills for similar work, but if that rate cannot be determined the court may rely on the rates charged by similarly situated attorneys or the rates charged by the attorney in similar cases. *Johnson*, 668 F.3d at 933.

Here, counsel requested the following hourly rates:

| Attorney | Rate requested by plaintiffs |
|---|---|
| Jeffrey Neslund | $550 / hour |
| Robert Robertson | $525 / hour |
| Michael Robbins | $600 / hour |
| Courtney Smallwood | $225 / hour |
| Marko Duric | $325 / hour |
| Thomas Kougias | $400 / hour |
| Law Clerk / Paralegal | $100 / hour |

Counsel supported these rates with personal affidavits, as well as affidavits from other civil rights attorneys familiar with their work and experience. The defendants concede that the requested rates for Courtney Smallwood and for law clerk/paralegal time are reasonable but assert that the

remaining lawyers have failed to meet their initial burden of establishing a reasonable rate for their

work product.  Generally speaking, the defendants contend that the plaintiffs have never billed a

client at the rates that they now seek to recover, that there is no evidence establishing that their

claimed rates are reasonable in the market at large, and that the proposed rates exceed those counsel

have previously received in similar matters.

As courts in this district have recognized, however, prior awards are of limited relevance

given that hourly fees increase over time as a result of both inflation and the increasing skill and

reputation of the billing attorney.  *Fox v. Barnes*, No. 09 C 5453, 2013 WL 4401802, at *3 (N.D. Ill.

Aug. 15, 2013) (Holderman, J.).  Fees, moreover, are calculated at counsel's current billing rate to

compensate for the inherent delay in payment in contingent-fee civil rights cases.  *Mathur v. Bd. of

Trs. of S. Ill. Univ.,* 317 F.3d 738, 744–45 (7th Cir. 2003).  Accordingly, the prior fee awards that the

defendants rely on are generally unpersuasive to this Court.

In this case, Neslund seeks to recover a rate of $550 per hour, Robbins seeks to recover a

rate of $600 per hour, and Robertson seeks to recover a rate of $525 per hour.  These proposed

rates are supported by affidavits from peer attorneys averring that these sums are reasonable given

counsels' skill and experience.  These three attorneys truly acted as partners in this case and were

equally skilled and competent in their representation of the plaintiffs.  Differences in respective

experience notwithstanding, the Court is therefore convinced that counsel are entitled to equal

compensation for their time and effort in this case.  After reviewing the affidavits and caselaw

submitted, the Court concludes that it is appropriate to compensate Neslund, Robbins, and

Robertson at a rate of $550 per hour in light of the respective experience that they brought to bear

on this complicated case.

The defendants also dispute the hourly rates requested by Marko Duric and Thomas

Kougias.  Duric, who was licensed in 2012, requests $325 an hour.  Duric's supporting affidavit,

however, does not disclose his hourly rates or other information regarding his rates or those of his peers to support his requested rate of $325 per hour. To the contrary, within the past year attorneys of comparable experience have received awards of $310 per hour and $275 per hour. *See Adamik v. Motyka*, No. 12 C 3810, 2018 WL 3574751, at *4 (N.D. Ill. July 25, 2018) (Durkin, J.) (awarding $310 to a civil rights attorney with five years of experience who served as trial counsel); *First Midwest Bank v. City of Chicago*, No. 14 C 9665, 2018 WL 4126570, at *23 (N.D. Ill. Aug. 29, 2018) (Leinenweber, J.). The defendants concede that $310 would be an appropriate award for Duric in this case. In light of the extenuating circumstances warranting an elevated fee award in *Adamik*, which awarded a similarly experienced attorney $310 per hour, the Court agrees that $310 per hour is an appropriate rate for Duric's services at the present time.

Kougias expressly swears that he currently bills his time at $400 per hour, although most of his cases are taken on a flat-fee basis. The defendants nevertheless contend that this request is unreasonable because Kougias' work as a criminal defense attorney is not comparable to his work in this civil rights case. Here, however, Kougias' work occurred in his capacity as an experienced criminal lawer; he was retained to secure access to evidence impounded in the criminal case of *People v. Michael Williamson*. The defendants have offered no evidence to suggest that $400 per hour is an unreasonable rate for Kougias to bill for appearances in criminal court, and this Court therefore sustains the requested rate.

*Review of IPRA Files*

The defendants separately contend that counsels' rates should be discounted during the time spent reviewing the IPRA investigations of 219 officer-involved shootings in support of the plaintiffs' *Monell* claims. In total, this review required 1,219.85 hours. The defendants contend that the review, billed at the attorneys' usual rates, should be compensated at a paralegal rate because it constitutes "first-level document review" and annotation. As other courts have previously found,

however, review of files from other incidents relevant to a *Monell* claim requires legal analysis of their content and is therefore appropriately compensated at attorney rates. *Fields v. City of Chicago*, 10-CV-1168, Dkt. 1249 (N.D. Ill. Jan. 1, 2018) (Kennelly, J.). Here, the plaintiff's *Monell* theory turned on identifying proof of a pattern of inadequate investigations into deadly force incidents and therefore required detailed legal analysis of the adequacy of prior investigations. The defendants do not, and cannot, argue to this Court that the *Monell* claim in this case was not material and, absent specific examples of waste, the Court declines to find that counsel's review of the files did not require the exercise of legal skill and judgment.

*The Number of Hours Billed*

The defendants next dispute the number of hours that plaintiffs' counsel have billed. Prevailing attorneys requesting a fee award are entitled to be fully compensated for their time so long as it was reasonably expended. *Hensley*, 461 U.S. at 435. However, the defendants argue that the plaintiffs should not receive full compensation for their fee requested fees because they were inadequately documented, excessive or unnecessary, duplicative or overstaffed, not tasks appropriate for attorneys, or connected to the underlying criminal case. The Court partially agrees.

*Inadequately Documented Hours*

When a fee petition is vague or inadequately documented, a court has broad discretion to strike the problematic entries or to reduce the proposed fee by a reasonable percentage. *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000); *Montanez v. Simon*, 755 F.3d 547, 555 (7th Cir. 2014). The defendants contend that, on total, 1,308.32 of the hours that the defendants seek to recover for are inadequately described using conclusory language like "Rev. IPRA file," "Rev. case mat. and identify exhibits," "Reviewed Minute Order," "Court appearance," and similar phrases. The defendants further note that Robertson and Duric both engaged in block-billing, a practice which makes it inherently difficult to distinguish how time was expended and whether the amount

spent on each task was reasonable. *Farfaras v. Citizens Bank and Trust of Chi.*, 433 F.3d 558, 569 (7th

Cir. 2006). After careful review, however, the plaintiffs' fee petition is not vague or inadequate. The

defendants are demanding an excessive amount of specificity, complaining that counsel must not

only identify a category of records being reviewed (e.g. Michael Williamson's VA Records) but must

specifically identify which documents were considered. The defendants have offered no authority

requiring this level of specificity of counsel. This Court, moreover, finds that it has no trouble

understanding what activities the plaintiffs seek to bill for and concluding that the time spent on

those tasks was reasonable. Although notations like "reviewed minute order" and "court

appearance" may be ambiguous on their face, the Court has had no difficult determining counsel's

activities by reference to the surrounding time entries and the docket in this case. Accordingly, the

Court declines to hold that counsels' time entries are inadequately vague.

*Excessive or Unnecessary Hours*

In determining the reasonable number of hours that an attorney may bill, courts deduct

those hours that are excessive, redundant, or unnecessary. *Small v. Richard Wolf Med. Instruments Corp.*,

264 F.3d 702, 708 (7th Cir. 2001). The defendants first contend that the 148.86 hours that Neslund

and Robbins spent communicating with their three clients was unreasonable. The plaintiffs,

however, have provided detailed explanation of the majority of these communications, and this

Court, after close review, has not found any communications that it considers excessive or

unreasonable in light of the nature and duration of this case.

The defendants further contend that plaintiffs' counsel excessively billed for

communications between counsel and their staff. Indeed, over three years the defendants assert that

Neslund, Robbins, Robertson, and a paralegal spent 535.61 hours in consultation. This, the

defendants believe, constitutes unreasonable double or triple-billing that a client would not allow.

The defendants do not identify specific communications that they believe were unnecessary, but

instead ask this Court to implement an across-the-board reduction of 50% of the time spent on internal communications on the assumption that these meetings were excessive or are unreasonable to bill.

The Seventh Circuit, however, has expressly recognized that the practice of law usually involves significant periods of consultation between counsel, and that such time is reasonably billable. *Tchemkou v. Mukasey*, 517 F.3d 506, 511 (7th Cir. 2008). The use of multiple lawyers is a common practice resulting in the efficient distribution of work, and there is no hard-and-fast limit on how many lawyers can attend a meeting or how long lawyers can spend discussing a project. *Gautreaux*, 491 F.3d at 661. Indeed, a cursory review of defense counsel's billing records shows that they have billed their client for precisely the same sort of internal communications that they now claim the plaintiffs should be unable to recover for. The Court might perhaps credit an argument that specific communications between lawyers were excessive or unnecessary, but the defendants have failed to single out any specific communications that were unnecessary or unwarranted. Although the substantial amount of time spent communicating between counsel might give pause, it is not plainly unreasonable given the scope and duration of this case.

The defendants next contend that the plaintiffs' paralegal, Coronado, billed an excessive amount of time compiling the plaintiffs' fee petition. The defendants assert that Coronado spent 168.3 hours compiling the fee petition and that, given that she only billed 653.9 hours on this case, that total is excessive and should be reduced. Defendants' arguments to the contrary notwithstanding, the Court does not find the amount of time spent preparing the fee petition to be excessive when compared to the total number of hours expended on this case. The Court does, however, take issue with the tasks that Coronado performed in preparing the fee petition. Specifically, the Court notes that she billed 53.55 hours of time entering counsels' hours from dictations. This Court does not consider the transcription of dictations regarding time to be an

activity requiring the specialized skills or competencies of a paralegal, and accordingly reduces Coronado's hours accordingly.

The defendants also assert that plaintiffs' counsel spent an excessive amount of time reviewing and drafting documents, and that counsel's time should be arbitrarily halved for those tasks that defense counsel considers excessive. As other courts have recognized, however, mere allegations of superfluous or excessive hours are insufficient to overcome evidence of reasonableness. *Berthold Types Ltd. v. Adobe Systems, Inc.*, 186 F. Supp. 2d 834, 840 (N.D. Ill. 2002) (Bucklo, J.). Here, the defendants have offered nothing aside from their own assertion that the hours plaintiffs counsel claim are unreasonable. Those, however, are the hours the plaintiffs actually expended, and the defendants have offered no evidence that they are disproportionate to the scope or value of this case.

The defendants further contend that the plaintiffs should not be able to recover for time spent litigating unsuccessful arguments. A prevailing plaintiff is not entitled to recover fees for time spent pursuing reasonable but unsuccessful arguments in support of successful claims. *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998). Here, the defendants contend that the plaintiffs should not be able to recover for 26.4 hours devoted to the plaintiff's unsuccessful motion for leave to file a second amended complaint and the subsequent motion to reconsider or for the 14.4 hours spent drafting the plaintiff's motion to strike the defendants' motion for partial summary judgment. The motion to amend sought to add a newly-allowed federal claim arising from the facts of this case, which, because of this Court's ruling, is now being actively litigated in a separate proceeding. The plaintiffs attempt to interject that claim into this litigation was reasonable given the efficiency benefits that might have resulted. The Court does agree, however, that the plaintiffs' motion to strike was both unsuccessful and unreasonable given that the arguments it raised were focused on

the merits of the defendants' summary judgment motion. Accordingly, the Court will reduce the

plaintiffs' fee request by the 14.8 hours that the Court concludes were dedicated to that motion.

The defendants next contend that the plaintiffs' travel time in this case was excessive.

According to the defendants, counsel billed 89.8 hours to travel to San Francisco to depose their

expert witness. Disregarding the defendants' duplicative arguments regarding the number of

partners who participated in the deposition, the defendants' primary complaint appears to be the

sixty-some hours that Robertson billed while driving to and from California. Had Robinson billed

for his driving time alone, this Court would not hesitate to find the claimed hours excessive given

that Robinson elected to engage in a 30 hour drive rather than taking a three-hour flight. *See Wade v.*

*Kroger Co.*, No. 3:01CV-699-R, 2008 WL 4999171, at *8 (W.D. Ky. Nov. 20, 2008) (finding it

unreasonable for an attorney to seek to recover driving time when any paying client would have

refused to compensate counsel for more than the time that a flight would have required). Here,

however, Robinson has represented that he was not driving and in fact spent a substantial amount of

time performing case-related work while his wife drove him to and from California. The defendants

have offered nothing to call this claim into question, and the Court therefore will award Robinson

fees for the time he spent working while traveling. The Court, however, will not award Robinson

fees for the time he spent traveling while otherwise unproductive and therefore reduces his claimed

time by 11.55 hours.

The defendants also claim that Robbins billed for work performed while flying back to

Chicago and also billed separately for his travel time. After close review, that assertion is not

supported by Robbins billing records. Finally, the defendants further challenge the travel time that

the plaintiffs' law clerks claimed for traveling to and from this courthouse. The defendants,

however, have produced no evidence establishing how long it reasonably takes to travel from the

10

plaintiffs' offices to the federal courthouse, and this Court therefore has no basis for concluding that the hour-long round trip that the law clerks billed for is unreasonable.

Finally, the defendants assert that the plaintiffs should not be able to recover the collective 24.5 hours that counsel spent waiting for the verdict on the final day of trial. The Court agrees that this time was not reasonably expended and reduces counsels' hours accordingly. *See Warfield v. City of Chicago*, 733 F. Supp. 2d 950, 959–960 (N.D. Ill. 2010) (Castillo, J.) (holding that time billed awaiting a verdict was not reasonably expended).

*Duplicative Hours or Overstaffing*

The defendants also argue that counsel overstaffed this case. In particular, the defendants focus on the depositions in this case, which were predominantly attended by two or three partner-level attorneys, although they also argue more broadly that multiple attorneys were needlessly involved in the motion practice occurring in this case. This Court is obligated to scrutinize fee petitions for duplicative time. *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1160 (7th Cir. 1989). As an initial matter, a lot of the "duplicative" time that the defendants have identified has been time in which multiple attorneys worked on one task, such as drafting a brief. The Court does not consider it duplicative for multiple attorneys to work on a shared task, and the defendants have offered no legal authority establishing otherwise.

The defendants' primary argument, however, is that it was duplicative for multiple attorneys to attend depositions or hearings. Although some courts within this district have found it duplicative to have two attorneys attend a deposition, others have recognized the efficiency benefits of having multiple lawyers attend to a case. *Compare Chicago Messenger Service v. Nextel Commc'ns, Inc.,* No. 01 C 8820, 2005 WL 643270, at *3 (N.D. Ill. March 16, 2005) (Norgle, J.) (finding it duplicative to bill for a junior attorney's attendance at court hearings and depositions) *with Mostly Memories, Inc. v. For Your Ease Only, Inc.,* 594 F. Supp. 2d 931, 935 (N.D. Ill. 2009) (Castillo, J.) (recognizing the

11

benefits of having multiple attorneys working on a case); *Bohen v. City of East Chicago*, 666 F. Supp. 154, 157 (N.D. Ind. 1987) (Easterbrook, J.) (holding that having two lawyers involved in a case is the "minimum in much private litigation" and that the presence of multiple lawyers at depositions may be a practical necessity in some cases). Although it is not duplicative to have multiple attorneys attend a deposition, however, the Court cannot ignore how many depositions multiple attorneys were present at. Twenty-three depositions were attended by two partner-level attorneys, and eight depositions were attended by three partner-level attorneys. In light of the complexity of this case and the competency of counsel (as reflected by their fee requests), the Court finds this volume of multi-attorney depositions to be excessive. The Court accordingly reduces each attorney's billing for time spent engaging in depositions where two or more lawyers were present by 20%, which reduces Robertson's fee request by 11.1 hours, Neslund's fee request by 13.2 hours, and Robbins fee request by 9.2 hours.

*Administrative Tasks*

An attorney cannot recover fees for time that would not be properly billed to a private sector client. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999). This includes those hours expended by counsel or a paralegal on administrative tasks that are easily delegable to non-professional assistance. *Id.* Among those tasks courts have considered noncompensable in the past are are "time spent organizing file folders, preparing document[s], assembling filings, electronically filing documents, sending materials, docketing or logging case events into an internal case tracking system, and telephoning court reporters." *Delgado v. Village of Rosemont*, N. 03 C 7050, 1006 WL 3147695, at *2 (N.D. Ill. Oct. 31, 2006) (Leinenweber, J.). After reviewing counsels' hours, the Court agrees with the defendants that counsel have billed for administrative tasks such as making copies, corresponding with court reporters, sending faxes, and assembling binders. The Court accordingly reduces counsel's claimed time as follows:

| Attorney | Reduction of hours claimed for Administrative Tasks |
|----------|-----------------------------------------------------|
| Neslund | 3.1 |
| Robbins | 13.3 |
| Robertson | 2 |
| Law Clerks | 7 |
| Smallwood | 0.8 |

The Court also agrees that Coronado, the plaintiffs' paralegal, has sought to recover for some administrative tasks that are not properly billed at a paralegal rate. The Court, however, does not agree with the defendants' assertion that over one-third of her entries are administrative tasks. It is often the case that paralegals perform tasks requiring both clerical and legal skills simultaneously, such as when assembling exhibit binders from case files or interacting with counsel or the Court. After careful review, the Court concludes that Coronado spent 45.15 hours on purely administrative tasks, and reduces her hours accordingly.

*Time Spent on the Criminal Case*

The defendants next dispute whether counsel can recover for the hours that they spent defending the criminal cases against Michael and Princeton Williamson. Some courts have previously interpreted Section 1988 to allow counsel to recover for fees incurred in defending a state criminal proceeding that was a necessary prerequisite to success in the section 1983 action. This has been the case, for instance, in claims alleging false arrest or malicious prosecution. *See, e.g., Castellano v. Fragozo,* 311 F.3d 689, 710 (5th Cir. 2002), *reversed en banc on other grounds in* 352 F.3d 939 (5th Cir. 2003) (allowing a plaintiff alleging malicious prosecution to recover the fees spent defending against that prosecution under section 1988); *Ingram ex rel. Ingram v. Jones,* 46 F. Supp. 2d 795, 800; n. 9 (N.D. Ill. 1999) (Keys, Mag. J.) (granting fees for criminal representation relevant to the plaintiff's false

13

arrest claims).  Other courts, however, have recognized such fees to be compensatory damages recoverable in the civil action itself.  *Kerr v. City of Chicago*, 424 F.2d 1134, 1141 (7th Cir. 1970).  At least one Court in this district, moreover, has expressly concluded that criminal fees are not recoverable under section 1988.  *See Lee v. City of Chicago*, No. 07 C 2035, 2008 WL 5377798, at *3 (N.D. Ill. Dec. 18, 2008) (Lindberg, J.).  Unlike a false arrest or malicious prosecution case, moreover, this case does not involve claims arising directly from the criminal prosecution.  Instead, the plaintiffs' criminal prosecution is relevant to the excessive force claims at issue here only to the extent that, had the plaintiffs been found to be in possession of a firearm in the criminal case, it would have made if more difficult for them to establish that the defendant used excessive force against them.  The plaintiffs have offered no legal authority establishing that this connection is sufficient to permit the Court to award attorney's fees for the criminal representation under section 1988.  Plaintiffs' counsel accordingly will not be permitted to recover for the time spent defending against the plaintiffs' criminal case, which amounts to 119.75 hours for Neslund, 56.10 hours for Robbins, and 45 hours for Robertson.

*Supplemental Fee Petition*

As a final matter regarding plaintiffs' counsel's fee request, the Court turns to counsels' supplemental fee petition.  The Court rejects the plaintiffs' request for prejudgment interest because the depreciation of the fee award is already accounted for in this case by the Court's use of counsel's current billing rates in calculating the award.  *Pickett v. Sheridan Health Care Center*, 813 F.3d 640, 647 (7th Cir. 2016).  The plaintiffs also request an additional $132,468.75 in fees, based on the 236.85 hours that counsel spent replying to the defendants' response brief opposing their fee petition.  The Court finds it patently unreasonable that three partner-level attorneys each billed two work-weeks preparing a single reply brief.  The Court accordingly halves the requested time, and reduces counsels' hours to 35.8 hours for Neslund, 42.2 hours for Robbins, and 40.4 hours for Robertson.

*Final Calculations*

The Court accordingly concludes that the plaintiffs' current lawyers are entitled to be compensated for the following hours and amounts. The Court declines to adjust the lodestar, having concluded that the hours that counsel have sought compensation for accurately reflect the difficulty of this case.

| Attorney | Fee | Hours Approved | Total |
|---|---|---|---|
| Jeffrey Neslund | $550 / hour | 2,203.8 | $1,212,090 |
| Robert Robertson | $550 / hour | 2,146.45 | $1,180,547.50 |
| Michael Robbins | $550 / hour | 1,693 | $931,150 |
| Courtney Smallwood | $225 / hour | 19.8 | $4,455 |
| Marko Duric | $310 / hour | 215.95 | $66,944.50 |
| Thomas Kougias | $400 / hour | 11 | $4,400 |
| Law Clerk / Paralegal | $100 / hour | 672.3 | $67,230 |
| Total | | | $3,466,817 |

**Former Counsel's Petition for an Attorney's Lien**

Regan Ebert, who originally represented Kierra and Princeton Williamson, separately moves the Court to adjudicate her right to a lien on those plaintiffs' judgment under the Illinois Attorney's Lien Act.[1]  Under Illinois law, when a client terminates an attorney working under a contingent-fee contract the contract becomes inoperative, but the discharged attorney remains entitled to recover a reasonable fee for services rendered on a *quantum meruit* basis. *Wegner v. Arnold*, 305 Ill.App.3d 689, 693, 713 N.E.2d 247 (1999).  In determining the *quantum meruit* award, the Court considers the time

---

[1] Ebert's filings make no reference to 42 U.S.C. § 1988, and this Court is therefore compelled to conclude that she is only proceeding on the basis that she is entitled to a *quantum meruit* recovery of her fees from the individual plaintiffs.

and labor required, the attorney's skill and standing, the nature and difficulty of the case, the usual and customary charge for that kind of work, and the benefits resulting to the client. *Will v. Northwestern Univ.,* 378 Ill.App.3d 280, 304, 881 N.E.2d 481 (2007).

Here, Ebert testified that her hourly rate ranges from between $350 to $450 per hour. The attached billing records further establish that Ebert seeks to recover a billing rate of $400/hour, although this rate is never set forth in the body of her fee petitions. Ebert also failed to testify as to the extent of her experience with civil rights litigation or the rates that she has charged in prior civil rights cases. Nevertheless, the Court finds Ebert's testimony about her current rates to be plausible, especially in light of the rates that the defendants approved for the plaintiffs' current counsel, and notes that the defendants have offered no actual evidence calling the reasonableness of those rates into question. The Court therefore accepts Ebert's requested rate of $400/hour.

The Court finds, however, that the hours that Ebert seeks to recover for must be substantially reduced. As an initial matter, Ebert has conceded that 7.3 of the hours that she claimed for her work on behalf of Kierra Williamson were inadequately described and that 2.9 of those hours were excessive. She has similarly conceded that 2.4 of the hours the expended on behalf of Princeton Williamson were inadequately described and that 3.3 of those hours were excessive. The Court, moreover, notes that Ebert has billed both of her clients for performing the same tasks. After close review of Ebert's billing records, the Court holds that she double billed for 11.7 hours. The Court accordingly reduces her fee request for Kierra and Princeton by 5.85 hours each. The Court further notes that Ebert seeks to recover time spent performing a number of administrative or paralegal tasks such as sending third-party record requests, photocopying, and court filings. Based on the caselaw previously set forth, the Court therefore reduces Ebert's claimed time for Kierra by 13.2 hours and reduces Ebert's claimed time for Princeton by 2.9 hours. The Court further deducts the 12.5 hours that Ebert spent compiling her fee petition for Princeton and the 10.5 hours spent

16

compiling her fee petition for Kierra, as Ebert has failed to establish that time spent drafting a fee petition is properly recovered under a *quantum meruit* theory. The Court, however, does not find that Ebert engaged in excessive client communication, that her timekeeping entries are undiscernibly vague, or that she engaged in excessive billing. As a final matter, the defendants argue that Ebert cannot recover for the time spent on Princeton Williamson's criminal case. Here, however, Ebert is seeking to recover her fees under a *quantum meruit* theory and not as a byproduct of the judgment in this case under section 1988. Accordingly, those fees are recoverable. The Court will therefore allow Ebert to recover for 63 hours of legal work on behalf of Kierra Williamson and 31.4 hours on behalf of Princeton Williamson.

Ebert also seeks to recover costs for her work on behalf of Princeton and Kierra. The defendants, however, correctly note that Ebert has failed to document $56.72 of the requested $1008.04 in costs that she requests for her representation of Kierra. Ebert concedes that she did not provide records supporting these costs, but instead argues that the Court should overlook this failing based on her explanation of the origin of the costs. The court declines to do so, and accordingly awards Ebert costs in the amount of $951.32. Based on the Court's findings, Ebert is entitled to recover $23,600 in attorneys' fees and $951.32 in costs from Kierra Williamson's proceeds in this case and to recover $12,820 in attorneys' fees and $935.97 in costs from Princeton Williamson's proceeds in this case.[2]

**Conclusion**

For the foregoing reasons, Ebert's petitions for attorney's fees based on *quantum meruit* [263, 267] are granted in part and denied in part. The Court holds that Ebert is entitled to recover fees and costs in the total amount of $24,551.32 from Kierra Williamson's proceeds in this case and is

---

[2] As it is not presently clear whether the judgment in favor of these plaintiffs has already been paid, the Court declines to order the defendants to take any action regarding the payment of these amounts.

17

entitled to recover fees and costs in the total amount of $13,755.97 from Princeton Williamson's proceeds in this case, and orders that an attorney's lien be placed on those amounts if they have not already been paid to the plaintiffs. Accordingly, Ebert's motions for a hearing [269, 272] are denied. Plaintiff counsel's petition for fees and costs [268] is granted in part and denied in part. The Court awards the plaintiffs' current counsel $3,466,817 in fees.

 IT IS SO ORDERED.

Date: 7/31/2019

Entered: _____

SHARON JOHNSON COLEMAN
United States District Court Judge